# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **(1) BRENDAN NUNEMACHER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.  4:18-cv-140 |
| ) | |
| **(1) UNUM LIFE INSURANCE COMPANY** ) | |
| **OF AMERICA,** ) | Attorney Lien Claimed |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Plaintiff Brendan Nunemacher, for his cause of action against Defendant UNUM Life Insurance Company of America, alleges and states as follows:

### I.     Jurisdiction and Venue

1.     Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover short-term disability ("STD") benefits due under an employee benefit plan, and to recover costs and attorney's fees as provided by ERISA.

2.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.  Under 29 U.S.C. § 1132(f), this Court has jurisdiction without regard to the amount in controversy or the citizenship of the parties.

3.     Venue is properly in this district pursuant to 29 U.S.C. § 1132(e)(2) and pursuant to 29 U.S.C. § 11391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

## II.     Parties and Plan

4. Plaintiff is a forty-nine (49) year-old male. He resides in the City of Chesterfield, St. Louis County, State of Missouri and in this judicial district.

5. At all relevant times, Plaintiff was employed by SSM Health Saint Louis University Hospital ("SSM Health"). He worked as a Certified Surgical Tech.

6. SSM Health provided short term and long term disability insurance coverage to its eligible employees, including Plaintiff, through welfare benefit plans – a Short-Term Disability Plan ("STD Plan") and a Long-Term Disability Plan ("LTD Plan").

7. At all relevant times, Plaintiff was eligible to participate in the STD and LTD Plans sponsored by SSM Health, did participate in the Plans, and was a participant in the Plans within the meaning of 29 U.S.C. § 1002(7).

8. The STD insurance coverage applicable to Plaintiff was pursuant to a group STD insurance policy issued and underwritten by UNUM. The Group Policy Number is 420043-001.

9. UNUM is a foreign corporation having its principal place of business in Portland, Maine. At all relevant times, UNUM was and is authorized to do business within the State of Missouri and within this judicial district.

10. The STD Plan is an "insurer administration" type plan pursuant to a group insurance contract between SSM Health and UNUM. The applicable Group Insurance Policy is 420043-001 ("STD Policy"), and the governing jurisdiction applicable to the policy is Missouri. Pursuant to the terms of the STD Plan and related STD Policy issued by UNUM, STD claims are administered by UNUM and benefits under the STD Plan are

paid by it. Benefit determinations with respect to Plaintiff's claim under the STD Plan were at all relevant times made by UNUM.

11.     At all times relevant, UNUM was and is a STD Plan fiduciary within the meaning of 29 U.S.C. § 1002(21)(A).

12.     Under the above-referenced STD Policy, the STD Plan defines "disability" as "limited from performing the material and substantial duties of your regular occupation due to your sickness" and a consequent loss of 20% or more in monthly earnings due to the same sickness.

13.     According to the "proof of claim" provisions of the STD Policy, a claimant must show: (1) he is under the regular care of a physician; (2) appropriate documentation of weekly earnings; (3) the date disability began; (4) the cause of disability; (5) the extent of disability, including restrictions and limitations preventing the claimant from performing his regular occupation; and (6) the name and address of treating institutions and attending physicians.

14.     The STD Policy defines "material and substantial duties" as those normally required for the performance of the claimant's regular occupation and which cannot be reasonably omitted or modified.

15.     "Regular occupation" means the occupation the claimant is routinely performing when his disability begins, and UNUM reviews the occupational duties as such are normally performed in the national economy.

16.     The STD Policy defines "sickness" as an illness or disease.

17.     Under the STD Plan and related STD Policy, Plaintiff's STD benefit amount

was 60% of his weekly earnings.

18. Under the STD Plan and STD Policy provisions applicable to Plaintiff, the elimination period is 30 days and the maximum STD benefit duration is 150 days.

19. Eligible participants in the LTD Plan who are continuously disabled for 180 days may apply for and receive LTD benefits under the applicable LTD Plan.

20. Therefore, according to the prerequisites of the LTD Plan, a LTD claimant is not eligible to receive LTD benefits from UNUM unless he is found to be totally disabled for the duration of the STD elimination and maximum benefit periods.

### III.   Allegations Applicable to All Claims

21. Plaintiff began working for SSM Health on January 28, 2013. He last worked on February 20, 2017. As a full-time Certified Surgical Tech, Plaintiff worked 40 hours per week. As of the date he last worked, Plaintiff was paid $690.99 per week.

22. As a consequence of the debilitating and cumulative effects of narcolepsy and obstructive sleep apnea, Plaintiff could not perform the duties of his job after February 20, 2017.

23. On or about February 28, 2017, Plaintiff initiated a claim for STD benefits with UNUM.

24. Thereafter, UNUM began investigating the claim. It requested and received information from Plaintiff's employer confirming Plaintiff's pertinent employment information. UNUM did not request or receive a copy of a job description applicable to Plaintiff's work as a Certified Surgical Tech.

25. At the outset of its claim investigation, UNUM also requested information

from Plaintiff's treating physician, Dr. Anthony Masi. By an Attending Physician Statement dated March 2, 2017, Dr. Masi confirmed to UNUM that he advised Plaintiff to stop working. Dr. Masi also endorsed Plaintiff's diagnoses of narcolepsy and obstructive sleep apnea.

26. In a follow-up correspondence dated March 6, 2017, Dr. Masi responded to UNUM's inquiry about "what the patient should not do" by reiterating that "Patient is currently off work." Dr. Masi endorsed that Plaintiff's inability to work began on February 18, 2017 and he estimated that Plaintiff would be off work to August 19, 2017.

27. UNUM also received Dr. Masi's medical records reflecting his office visit with Plaintiff on February 3, 2017. Among other things noted therein, the medical record confirmed that Plaintiff's most recent Epworth Sleepiness Scale ("ESS") was elevated and abnormal.

28. The ESS is a self-administered questionnaire which provides a measure of a person's general level of daytime sleepiness. The total ESS score is the sum of 8 item-scores and can range between 0 and 24. The higher the score, the higher the person's level of daytime sleepiness. *See* http://epworthsleepinessscale.com/about-the-ess/ (last visited January 22, 2018).

29. Plaintiff's ESS score on February 3, 2017 was 19 – which indicates severe excessive daytime sleepiness.

30. Without having a job description applicable to Plaintiff's work, UNUM nevertheless decided that Plaintiff was not disabled because Dr. Masi did not provide Plaintiff's specific restrictions and limitations. By letter dated March 14, 2017, UNUM

-5-

notified Plaintiff that it had denied his STD claim.

31.  On March 24, 2017, Dr. Masi submitted additional information in support of Plaintiff's STD claim. Included among the new information was a note from Dr. Masi specifically addressed to UNUM concerning the "medical necessity" of Plaintiff's disability. In the note dated March 24, 2017, Dr. Masi said:

> You appear to have overlooked a few important factors when making your decision. The severity of [Plaintiff's] medical conditions is clearly stated in my 2/03/2017 office note provided to you. His Epworth Sleepiness score despite significant stimulant therapy is still markedly elevated at '19 out of 24 (normal < 11).' I also state that he has 'Severe Obstructive Sleep Apnea.'
>
> I addressed your concerns about his work restrictions by updating his FMLA paperwork, which is included in this fax. For your edification, Mr. Nunemacher does not have a physical disability. His disability is related to his inability to stay alert on the job due to primarily his narcolepsy. His drowsiness can occur at any time while he is working despite stimulant therapy. He has raised concerns to me multiple times in the past about his drowsiness at work and his inability to concentrate during surgical cases. His drowsiness could potentially result in harm either to himself or to the patient who he is assisting with in the operating room.
>
> I recommended that Mr. Nunemacher take time off from work by using short term disability benefits in order that we can maximize his treatment with the goal of improving his daytime alertness both at work and at home.

32.  Dr. Masi's submission also included the sleep study tests results from November 6, 2014 which confirmed Plaintiff's severe obstructive sleep apnea.

33.  Dr. Masi's submission also included his completed Certification of Health Provider for Employee's Serious Health Condition wherein he endorsed that Plaintiff was unable to perform any of his job functions due to narcolepsy and severe obstructive sleep apnea.

34.  Following its receipt of Dr. Masi's submission, UNUM reopened Plaintiff's

STD claim and conducted a "round table review" on April 4, 2017. The participants grudgingly concluded that "given [Plaintiff's] fatigue and inability to concentrate during surgical cases, it is reasonable to support [restrictions and limitations] of limited ability for sustained focus, concentration and attention to details, limited to perform activities requiring accurate judgment/decisions." However, the roundtable reviewers accepted the above-noted restrictions and limitations as established for a 4-6 week period following Plaintiff's last date worked.

35. By letter dated April 4, 2017, UNUM notified Plaintiff that his STD claim was approved for payment through a closed period ending April 3, 2017.

36. Again, Dr. Masi submitted additional information supportive of Plaintiff's ongoing and continuing disability. On April 5, 2017, Dr. Masi submitted his office note evidencing his encounter with Plaintiff on March 29, 2017. The noted confirmed Plaintiff's continuing severe excessive daytime sleepiness and sleep attacks.

37. By handwritten note dated April 5, 2017, Dr. Masi advised UNUM that "overall, the patient has not demonstrated any clinical improvement. He is not medically fit to return to work yet due to his sleep attacks."

38. On April 12, 2017, UNUM reviewed Dr. Masi's most recent information in another roundtable review. The participants agreed that "[restrictions and limitations] of avoidance of activities requiring focus, concentration and attention to detail are valid and would continue through 5/24/17 to allow for effectiveness of medication and CPAP."

39. By letter dated April 12, 2017, UNUM notified Plaintiff that his STD claim was approved for payment through a closed period ending May 24, 2017.

40. By letter dated May 26, 2017, UNUM asked Dr. Masi to respond to certain questions pertinent to its administration of Plaintiff's STD claim.

41. Dr. Masi responded two days later. By his submission on May 26, 2017, Dr. Masi re-confirmed Plaintiff's diagnoses of narcolepsy (without cataplexy) and obstructive sleep apnea. He confirmed that it was his advise to Plaintiff to remain off work beyond May 24, 2017. Dr. Masi noted his clinical findings as "patient remains very sleepy during the day [and] [h]e is too sleepy to safely perform his required job duties." He endorsed Plaintiff's restrictions and limitations as "[p]atient is unable to stand for prolonged periods of time in order to assist with surgeries [and] [d]ue to his excessive sleepiness, his ability to focus and concentrate at work is limited." Finally, Dr. Masi opined that it was "uncertain" if Plaintiff would be able to return to work on a full-time basis.

42. Another roundtable review was conducted. The participants at the review done on May 30, 2017, agreed that "[restrictions and limitations] of unable to stand for prolonged periods of time and due to excessive sleepiness and avoidance of activities requiring focus and concentration are valid based on [Plaintiff's] continued symptoms." The reviewer's said that "[restriction and limitations] are likely to continue through 5/31/17."

43. By letter dated May 30, 2017, UNUM notified Plaintiff that his STD claim was approved for payment through a closed period ending May 31, 2017.

44. On or about June 15, 2015, a UNUM nurse re-reviewed Plaintiff's STD claim and the medical records received by Dr. Raman Malhotra, a physician who provided a 2nd opinion to Dr. Masi. Although the nurse had never examined the Plaintiff, she nevertheless

provided what UNUM calls a "clinical analysis." Therein, the nurse opined that "[t]here is no clinical or diagnostic evidence of functional loss in the medical records provided that would support [restrictions and limitations] beyond 5/31/17."

45.   UNUM's nurse lacked the appropriate training and experience in the field of medicine involved to render any valid or reliable opinion about Plaintiff's restrictions and limitations resulting from his undisputed medical conditions.

46.   UNUM's reliance on its nurse's review and her assertions about Plaintiff's functional loss, without regard to the duties of Plaintiff's job, is unreasonable and reflects an unprincipled review.

47.   By letter dated June 23, 2017, UNUM notified Plaintiff that it would not pay STD benefits beyond May 31, 2017 because of the review done by its nurse.

48.   Plaintiff initiated an appeal of UNUM's adverse STD claim decision on June 27, 2017.

49.   On July 6, 2017, as part of its appeal-related review, UNUM requested a job description from Plaintiff's employer. It received the job description applicable to Plaintiff's position on July 7, 2017.

50.   According to the job description, a Certified Surgical Technician "provides technical scrub skills in the operating room during surgical procedures and assists surgical team as needed in any other capacity . . . ." The "working conditions" include "must be able to travel to and between operating rooms at a rapid pace." "Must be able to work alone, with others, and around others." "Must have good organization, planning, reasoning, judgment, problem solving, and safety awareness skills."

51. The "physical requirements" of Plaintiff's position included the ability "to tolerate prolonged, extensive, or considerable sitting, standing, and walking." "Must be able to tolerate considerable reaching, bending, squatting, kneeling to retrieve equipment and perform patient treatment." "Must be able to communicate information in a manner appropriate for intended audience." "Must have manual dexterity and mobility." "Must be able to tolerate intermittent exertion when assisting in surgery." "Must be able to lift 50 pounds and push/pull 100 pounds."

52. A UNUM vocational rehabilitation consultant reviewed the job description and related Plaintiff's job to the occupation of Surgical Technician. Based on information purportedly from the *Dictionary of Occupational Titles*, UNUM's consultant found that a Surgical Technician "assists surgical team before, during, and after surgery." She opined that the occupation was "light work" consisting of:

- Exerting up to 20 pounds of force occasionally, and or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects;
- Occasional walking, occasional sitting, and frequent standing;
- Attaining precise set limits, tolerances, and standards; and
- Performing effectively under stress.

53. UNUM also requested and received medical records from Dr. Masi back to May 2016. The 2016-related records confirmed Plaintiff's diagnoses of narcolepsy (without cataplexy) and obstructive sleep apnea and evidenced his complaints about excessive sleepiness and impaired focus and concentration.

54. UNUM also received a letter from Dr. Malhotra, who wrote to address UNUM's "twisting and distorting" of his words in its review of his previously-submitted

medical documentation.

55. In his letter dated July 24, 2017, Dr. Malhotra said there was objective proof of Plaintiff's disabling condition, i.e., narcolepsy, and objective proof of his excessive daytime sleepiness. Dr. Malhotra also clarified that while Plaintiff had been "non-adherent" with his CPAP, he had not been "noncompliant." And Dr. Malhotra told UNUM it was falsely reciting facts when it accused Plaintiff of "not using your CPAP consistently enough to be able to get a download of information."

56. By letter dated July 28, 2017, UNUM advised Plaintiff that it was referring his file to its "medical consultant" for review.

57. The "medical consultant" was another UNUM nurse.

58. The UNUM nurse opined that the available information did not indicate that Plaintiff "would be precluded from performing the physical demand level" of the occupation identified by UNUM's vocational rehabilitation consultant.

59. UNUM's "medical consultant" on Plaintiff's appeal did not address or consider whether Plaintiff was precluded from performing ***non-physical*** occupational duties requiring focus, concentration and attention to detail, i.e., attaining precise set limits, tolerances, and standards, and performing effectively under stress.

60. UNUM's "medical consultant" on Plaintiff's appeal lacked the appropriate training and experience in the field of medicine involved to render any valid or reliable opinion about Plaintiff's restrictions and limitations resulting from his undisputed medical conditions.

61. UNUM's reliance on its "medical consultant's" review and her assertions

about Plaintiff's functional loss, without regard to his *non-physical* occupational duties, is unreasonable and reflects an unprincipled review.

62. By letter dated August 2, 2017, UNUM notified Plaintiff that his appeal was denied.

63. In reaching its adverse claim decision and during the course of its claim handling process leading to the same, UNUM failed to apply the terms of the applicable policy to Plaintiff's STD claim, cherry-picked record information which might lend support to a claim denial while de-emphasizing or disregarding record information supportive of his claim, failed to consider the material, non-exertional duties of Plaintiff's occupation, and unreasonably relied on file reviews done by unqualified UNUM nurses who never observed or examined Plaintiff.

64. Plaintiff has exhausted his administrative remedies under the Plan.

65. Pursuant to the terms of the STD Plan and STD policy, UNUM is vested with the authority to determine benefit eligibility. The abuse of discretion standard of review therefore applies.

66. Pursuant to the terms of the STD Plan and applicable STD policy, UNUM makes the STD claim benefit decisions and also pays the claim. UNUM's dual role creates a conflict of interest, which must be taken into account as one factor in determining whether UNUM's decision to deny Plaintiff's claim was reasonable.

67. ERISA regulations require as part of a full and fair claim review process that "the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical

judgment." 29 C.F.R. §2560.503-1(h)(3)(iii); §2560.503-1(h)(4). UNUM failed to adhere to the applicable ERISA regulations and such constitutes a serious procedural irregularity. The serious procedural irregularity is a factor to be weighed in determining whether UNUM's decision to deny Plaintiff's STD claim was an abuse of discretion.

68. UNUM's denial of Plaintiff's STD claim effectively acts as a denial of a LTD claim because Plaintiff could not and cannot satisfy the 180-day elimination period of the LTD Plan.

## IV.   Statement of Claims

### First Claim

### ERISA – Improper Denial of Benefits

69. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 68 of this Complaint as though set forth at length herein and further alleges:

70. At all relevant times the terms of the Plan required payment of STD benefits to Plaintiff due to his debilitating impairments and consequential inability to perform the material and substantial duties of his occupation.

71. The failure of UNUM to pay STD benefits to Plaintiff due to his debilitating impairments is contrary to the terms of the STD Plan and is wrong and/or arbitrary and capricious.

72. Plaintiff seeks a declaration from this Court that he is entitled to the STD benefits due him under the terms of the STD Plan, and an Order that all future disability benefits and related other employee and/or STD and LTD Plan benefits should be provided

and maintained pursuant to the terms of the Plans.

73.     By reason of UNUM's incorrect, wrong, and/or arbitrary and capricious claim decision, Plaintiff has been forced to retain an attorney to secure disability benefits due him under the terms of the STD and LTD Plans for which Plaintiff has and will incur attorney fees and costs.

74.     Plaintiff is entitled to recover the reasonable attorney fees and costs of this action pursuant to 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Plaintiff, Plaintiff Brendan Nunemacher demands judgment against Defendant UNUM Life Insurance Company of America, as follows:

(1)  for a declaration that Defendant improperly denied payment of STD benefits to Plaintiff, and that Plaintiff is entitled to receive the amount of STD benefits due under the terms of the STD Plan that have not been paid, together with prejudgment and post-judgment interest thereon;

(2)  for a declaration that all related other employee benefits due Plaintiff as a consequence of his continuous total disability under the STD Plan be reinstated and/or paid according to the terms of the Plan(s), *including participation in and eligibility for LTD benefits under the LTD Plan*; and/or

(3)     for a declaration that Defendant denied him a full and fair review, and that as a consequence thereof, his STD claim should be reinstated and remanded for further claims procedures;

(4)  for the costs of this action and Plaintiff's attorney fees, pursuant to 29 U.S.C. §1132(g); and

-15-

(5)  for such other and further relief as may be deemed just and proper by the Court.

**Respectfully submitted,**

**SHOOK & JOHNSON, PLLC**

**By:**   **s/ Jonathan E. Shook**
**Jonathan E. Shook, MO Bar #68898**
**7733 Forsyth Blvd., Suite 1100**
**Clayton, MO 63105**
**(314) 296-6095 –** *telephone*
**(314) 296-6001 -** *facsimile*
**jshook@shookjohnson.com**

**ATTORNEY FOR PLAINTIFF**